IN THE

# SUPREME COURT OF JUDICATURE

OF THE

# STATE OF NEW-JERSEY,

## AT JANUARY TERM, 1850.

---

### FINLEY v. SIMPSON.

If a deed *inter partes*, whereby an estate is conveyed to the grantee, and the estate conveyed is accepted by the grantee, although only signed and sealed by the grantor, it is the deed of both parties, and the grantee is bound by the covenants therein contained on his part, and can be held in an action of covenant for the breach of them.

---

This was an action of covenant, brought by the plaintiff against the defendant, and was tried, at the May term of the Essex Circuit Court, before the Chief Justice.

The declaration sets out, in substance, that on the eleventh day of May, 1835, the plaintiff was seized of a certain lot of land, situate in Newark; and being indebted to one Elisha Whitaker in the sum of two hundred and thirteen dollars and seventy-five cents, gave to him his bond therefor, dated May 1, 1835, payable in four years; and that on the same day he gave a mortgage on the said land, and continued in the seizin of said lot subject to said mortgage, until the execution of the indenture next mentioned.

And the declaration then proceeds as follows: " And whereas, the said plaintiff being so seized, afterwards, and before

311

the payment of the said sum of two hundred and thirteen dollars and seventy-five cents, or any part thereof, *to wit,* on the ninth day of April, in the year 1836, by a certain other indenture of bargain and sale, then and there made between the said plaintiff, of the one part, and the said defendant, of the other part, he, the said plaintiff, for and in consideration of a certain sum of money, *to wit,* the sum of three hundred and twenty-six dollars and twenty-five cents, therefor, then and there paid by the defendant to the plaintiff, and the further sum of two hundred and thirteen dollars and seventy-five cents (the principal sum of the said bond and mortgage) to be paid by the defendant, with interest, as herein after mentioned, amounting in the whole to the sum of five hundred and forty dollars, did bargain and sell to the defendant the said lot of land and premises, with the appurtenances, in and by which said last mentioned indenture it was then and there declared, covenanted, and agreed by the defendant, that the said lot of land and premises, with the appurtenances; were on that occasion conveyed by the plaintiff to the defendant, subject to the said mortgage; and the said mortgage, or the principal sum thereof, was computed as so much of the said sum of five hundred and forty dollars consideration money, and that the defendant would pay the said principal sum of the said mortgage, with the interest which should thereafter accrue thereon: one part of which said indenture, sealed with the seal of the plaintiff, was then and there delivered by the plaintiff to the defendant, and then and there accepted and received by the defendant; by virtue of which said bargain, and by force of the statute for transferring uses into possession, the defendant then and there became and was seized in his demesne as of fee of and in the said lot of land and premises, with the appurtenances. And the plaintiff then avers, that the defendant did not pay the said principal sum of the said mortgage, and that the plaintiff was obliged and did pay the same, and that the defendant has not kept his covenant. The defendant pleaded "*non est factum*" as to the said indenture last mentioned.

The plaintiff, on the trial, offered in evidence the record of the indenture mentioned in his declaration, which purported

to be made between the plaintiff, of the one part, and the defendant, of the other part, and which was recorded in book G 4 of deeds for Essex county, in pages 482, &c., and was an ordinary indenture of bargain and sale in fee simple, with the usual covenants and warranty, conveying to the defendant, for the consideration, as expressed, of five hundred and forty dollars, a certain lot of land therein described : and, after the description of the land, contained these words : " The above premises are conveyed subject to a certain mortgage thereon, given by the said William M. Simpson to the said Elisha Whitaker, for two hundred and thirteen dollars and seventy-five cents, dated May 11th, 1835, which mortgage, or the principal sum thereof, is computed as so much of the above consideration money, and which, with the interest thereon hereafter accruing, the said Alexander Finley assumes to pay ;" which deed was signed and sealed by the plaintiff, but not by the defendant. The defendant, under his plea of " *non est factum,*" objected to the admission of this indenture in evidence as his deed, or as containing any covenant of the defendant, and raised the question, whether the plaintiff could sustain his action upon it. The court, without deciding the question, admitted the said deed in evidence.

The plaintiff then proved his own seizin of the land, and the giving of the said bond and mortgage, as set out in his declaration ; also, that the defendant accepted the said deed, and became seized and possessed of the said property under it ; and that the defendant repeatedly, by letters produced and proven on the trial, promised to pay to the plaintiff the amount of the said bond and mortgage.

The plaintiff also proved that the defendant, having neglected to pay the said bond and mortgage when they became due, the plaintiff was obliged, and did pay the same to the holder thereof.

. The plaintiff having rested, the defendant moved a nonsuit. The court overruled the motion, and directed a verdict to be taken for the plaintiff, subject to the opinion of the Supreme Court on the question of the admissibility of the said deed in evidence, as containing the covenant of the defendant, as al-

leged by the plaintiff, and suggested that the defendant should be at liberty to enter a rule to show cause, &c., at the next term of said court as of course, to which both parties assented.

The argument was had before GREEN, C. J., and RANDOLPH and OGDEN, Justices, by *Hubbell*, for defendant, and *Bradley*, for plaintiff.

*Mr. Hubbell*, for defendant.

1st point. Covenant cannot be created but by *deed*, with two or three exceptions : 1st, by custom of London ; 2d, in cases of the king's lessee by patent.    *Platt on Covenant* 5, 9.

2d point. Covenant cannot be sustained, unless the instrument on which action is brought has been actually signed and sealed by the party, or by his authority.

The word covenant implies a *deed*, and it is not necessary to allege in a declaration that the deed containing the covenant was under defendant's seal ; the circumstance of sealing must be inferred.    *Platt on Covenant* 5, 9.

The case of *Smith* v. *Emery*, in our courts, referred to hereafter, seems to establish a different rule as to the allegation. The older authorities sustain the position, that it is not the deed of the party, unless he actually seals, &c.    *Co. Lit.* § 373. "For if in the indenture, made in the third person or in the first person, mention is made that the grantor, *only,* has put his seal, and not the grantee, then is the indenture only the deed of the grantor," &c.    3 *Com. Dig.* 325, *Fait A* 2. The seal is essential to the deed, and therefore, regularly, it is not the deed of him who has not sealed it.    2 *Com. Dig., Covenant A* 1.    Covenant lies when a man covenants with another by *deed* to do some thing, and does it not, &c.    2 *Esp. N. P.* 114, 115, *Covenant*, is to the same effect. 1 *Chit. Pl.* 5 *Am. ed., Covenant*, 108–9, which shows that the action of covenant can only be sustained upon an instrument sealed by the party. So also *Com. Dig., Pleader* 2, *V* 2 ; 1 *Arch. N. P.* 250. Assumpsit, and not covenant, is the proper remedy where the plaintiff has executed a deed, and the defendant has not.    2 *Ld. Ray.* 1536, *Moore and Wife* v. *Jones*, which shows that covenant cannot be maintained upon a deed, unless the de-

fendant has sealed it: and it must be so alleged in the declaration.

2 *M. & W. Rep.* 111, *Cardwell* v. *Lucas.* Covenant on a lease not signed by lessor, but executed by defendant, held that the action could not be sustained. 6 *M. & S.* 75, *Metcalf* v. *Rycroft; Ib.* 341, *Wilson et al.* v. *Woolfryes.* In covenant, the plaintiffs declare that A., B., C., and D., by indenture, demised to defendant, and make profert of the counterpart. Plea *non est factum*, two of the lessees only executed, held the action would not lie. In 5 *B. & C.* 589, (12 *Com. L. R.* 327), *Burnet* v. *Lynch*, an action on the case, C. J. Abbott, 331, said covenant would not lie. Holroyd, J., 324, says, only an action on the case would lie. Littledale, J., says, " there is no instance of any such action in any of the books," &c., 335. In this case covenant cannot be maintained. This is the case quoted to sustain the position of *Co. Lit.* 231. See *Platt on Covenants* 10, 11, &c., *Law Library*, vol. 3.

If we look at the American cases. In 2 *Halst. Rep.* 142 ; *Emery et al.* v. *Neighbour et al.*, in debt, articles of agreement, signed and sealed by husband and wife, but not by trustees; they acted under it. The court say it was no covenant. This case meets fully the proposition of the plaintiff, that the acceptance of a deed, and acting under it, makes it the defendant's deed and his covenant. 7 *Halst. Rep.* 53, *Smith* v. *Emery*, demurrer. This case shows the same principle, the deed must be sealed by the covenantor. 1 *Penn.* 40, top of page, *Ludlam* v. *Wood*, is to the same effect. 2 *Halst. Rep.* 64, *Bilderback* v. *Powner.*

6 *Cowen's Rep.* 445, *Gale* v. *Nixon.* Covenant will be only when the instrument is actually signed and sealed by the party, or by his authority. A mere recognition of the contract, though under seal, will not sustain the action. 1 *Wend. Rep.* 164, *Le Page* v. *McCrea*, instrument executed by creditors, and not by the debtor, a composition deed by which the creditors agreed to take fifty per cent. of McCrea and his partner, and each creditor to look to the members of the firm individually. This action was brought by a creditor against defendant, held that it could not be sustained, because defendant had

not executed the agreement. 12 *Johns. Rep.* 197, *Van Sant-voord et al.* v. *Sandford.*

To the proposition, that defendant's acceptance makes it his *deed*, and is *equivalent to his sealing*, our reply is, that the clause inserted in the deed upon which this action is brought is no part of the deed, it is perfect without it. The plaintiff could convey subject to the mortgage, as a condition, and to give notice of the encumbrance. But this is an attempt to turn it into a personal obligation in the shape of an absolute covenant; it is therefore in gross, and no part of the deed, or defendant's deed.

A note in *Co. Lit.* to § 374, is in point. ".But if there is a condition comprised in the deed which is not parcel of the lease, but a condition in gross; if he does not put his seal to the deed, though he is party to the lease he is not party to the condition." See, also, § 374. If the principle contended for in this case is sanctioned, a deed may be made with a variety of obligations and covenants on the part of the grantee. The grantor may convey subject to payment of his own debt, or for a horse, or farming utensils, or for the performance of some personal duty, and, upon failure, bring an action of covenant.

3d point. It has been repeatedly decided that covenant cannot be sustained upon a *deed poll*, and it is hardly necessary to quote authorities. Is there in principle such difference between an *indenture* and a *deed poll* as to make such decisions inapplicable?

By both a fee is conveyed, although it is said to be *inter partes*. Is an indenture in fact any more evidence of an agreement than the other? A deed poll presupposes an agreement, and binds both parties, for the grantee accepting becomes in fact a party. We retain the form of an indenture in words, while it is no indenture in fact. In England both parties seal, usually by originals and counterparts. *Co. Lit.* § 370, Ld. Coke says, "A deed may be an indenture *without words*, but not by *words without indenting.*" And he gives the forms and the modes of conducting, &c. 2 *Doug.* 764, *Chancellor* v. *Poole.* And see previous cases.

4th point. In the deed from the plaintiff is an absolute cove-

nant, that the land is free of all encumbrance, mortgage, &c. Is not the plaintiff estopped by his covenant from setting up a covenant to pay off one, and this, too, when he only executes the deed ? If it is answered, that the prior words control, it is replied, that a pointed covenant should control words put in by the grantor, which he alone signs and seals, and particularly when those words are turned into a binding covenant on the part of the defendant.

5th point. It would be unsafe, and a source of litigation, if words put into a deed by the grantor are to be taken as the covenant of the grantee, upon which an action could be sustained, &c.

*Mr. Bradley*, for plaintiff.

I. The *facts* of the case show not only a *legal*, but a *just* ground of action, in favor of the plaintiff against the defendant, for the amount rendered by the jury in this case. The defendant ought to have paid off the mortgage. The amount of it formed part of the purchase money of the property. He agreed, expressly that he *would* pay it off. The deed which he accepted is *evidence*, if not in one form of action, certainly in another, of such express agreement. He did *not pay* it. The plaintiff was, in consequence, *obliged* to pay it. A clearer right to recover the amount *cannot* be made out. The only question is, as to the *form of the remedy*. The substantial justice of the case is with the plaintiff.

This being so, the defendant, in case he shall be found to have mispleaded, cannot demand a repleader : first, because the court will not award a repleader, excepting where complete justice cannot be answered without it; secondly, because it is not grantable in favor of the person who made the first fault in pleading. 1 *Chitty on Pleading* 656, *ed.* 1844 ; *Goodtwine* v. *Bowman*, 9 *Bing.* 532.

II. Not only had the plaintiff, *according to the facts of the case*, a right of action against the defendant for the amount claimed, *before coming into court*, but his *declaration sets out and discloses those facts*. It discloses a full and complete cause of action. *In substance* it is sufficient. If wrong in any respect,

it is *so only in matter of form*. It may be that in form the action should have been *assumpsit*, and not *covenant*. If so, the defendant, by *special demurrer*, may have availed himself of the error. By the statute of *Amendments and Jeofails*, (*Rev. Stat.* 989, § 12,) the legislature is painfully anxious that the court, on demurrer, (by which all legalities of pleading and proceeding are brought in question) shall give judgment *according as the very right of the cause and matter in law shall appear unto them, repeating* the injunction, that "*the court shall give judgment according to the very right of the cause,*" unless the party objecting set down specially his causes of demurrer. By the same act (§ 8), all "*mispleading*" and "*misconceiving of process*" after verdict shall be cured.

Now apply these principles to the case in hand.

The declaration, in its introduction, *recites* a summons to *answer of a plea of covenant broken*. It then sets out the exact circumstances of the case, how that the plaintiff owned a certain lot of land, mortgaged the same to secure the payment of his own bond, and afterwards conveyed the same to the defendant, upon consideration of the defendant's paying him a certain sum of money, and also paying off this bond and mortgage ; that the deed which the defendant accepted contained a stipulation, on his part, to pay off said bond and mortgage ; that he entered into possession of the property under that deed ; that he neglected to pay the debt, and that thereupon plaintiff *had* to pay it : concluding with the charge, that the defendant *had not kept his covenant*.

Now leaving out the formal clauses relating to the action of covenant, at the commencement and end of the declaration, as surplusage, if you please, there is still enough left to show a cause of action. There is an agreement upon a valid consideration, and a failure to perform that agreement. Be it, that those formal expressions are inconsistent with the case disclosed in the body of the declaration, is it, after all, any thing more than an error *in form*, in *form alone ?* To declare in *trespass* when the action should be *case*, may, perhaps, be error in substance ; because the measure of damages is different in the two actions. But it is not so with *covenant* and *as-*

*sumpsit.* In these actions, the measure of damages is the same. It may be thought that the cause of action which we have disclosed is one of *case* and not *covenant*, be it so ; the error is only one of form, and being such, the proper remedy of the defendant would have been a *special demurrer*.

I say *a special demurrer*, not the plea of *non est factum*. We *did not allege that it was his deed*. We set out the case as it was. We alleged that it was an indenture, that it was sealed with the seal of *the plaintiff*, that it was delivered to the defendant. We did not allege that the defendant sealed it, or *that it was his deed*. The defendant should have *demurred* to the declaration.

We set out the facts, and left it for the court to infer whether the deed was or was not the defendant's deed. The defendant had no right to plead *non est factum*. 1st, because we did not say "*factum suum ;*" 2d, because whether it was his deed or not was immaterial, a mere question of *curious law*, having reference to the *form* of the remedy, and not to the *gist* of the action.

I therefore say he should have put in a *special demurrer*. Not having so done, but having pleaded over, we are entitled to judgment, either *upon verdict* or *non obstante verdicto*.

Our having taken issue on the plea does not alter the case. It *would* alter it, if the justice of the case were not with us, for then the defendant would be entitled to a *repleader*. But as the case is, he is *not* entitled to it.

III. But we contend that the action *was rightly conceived ;* that the *deed was* the defendant's deed ; that the stipulations therein contained, on his part, were his covenants, and that the verdict, upon the issue of *non est factum*, was properly rendered for the plaintiff.

This is so technically, as well as equitably, according to the common law and the books which have the *force of authority* in New Jersey.

The deed containing the stipulation on which the action was brought was an indenture, both in *name* and in *character*, and is therefore invested with all the incidents and implications of an indenture. It was so in name. It was so in character, in

its *essential nature*. *Co. Lit.* 229, *a*. " An indenture is a writing containing a conveyance, bargain, contract, covenants, or agreements, between two or more, *and is indented at the top*," &c. The latter requisite, of actual indentation, has become obsolete. The main requisites at this day are, that it be styled an indenture, and be a contract or agreement *between two or more parties*, in other words, a *mutual agreement inter partes*. A bargain and sale of lands is *precisely of this character*. Many crude notions exist on the character of a bargain and sale.

In all transfers of real estate at common law, whether by livery or grant, the *bargain* or *agreement* of the parties *preceded* that livery or grant. The livery or grant itself was the mere *instrument of conveyance* used for *carrying out* and *executing* the previous agreement. It was not the agreement, nor any part of it, but was the consummation of the agreement on the part of one of the parties. Hence a livery or grant was the act of one party, and *ex propria natura*, was the subject of a deed poll.

The charter of feoffment or the grant might, it is true, have incorporated with it, in the same instruments, mutual stipulations or conditions respecting the estate conveyed. In such cases an indenture would be proper. But, used simply as evidences of *conveyance*, they were deeds poll, even when they rehearsed the consideration on which they were founded.

The *bargain* of the parties respecting the sale of land was always a distinct thing from the *conveyance* of the land by which the bargain was complied with.

The original *bargain* might be of one character or of another character. It might be for a *sale* of the land, (which implied a pecuniary price) or for a gift of it, in consideration of blood, or for an exchange, or for a conveyance as a mere gratuity. When it was for a *sale*, the contract was called a *bargain and sale*, meaning a *bargain of sale* or a *bargain for a sale*. The phraseology employed was something analogous to that which we use when we say " trespass and assault," " trespass and false imprisonment," " trespass *de bonis asportatis*," or " trespass and ejectment," where our meaning is, respectively, *trespass by assaulting*, *trespass by ejecting*, &c.

By a *bargain and sale*, then was meant a *bargain of sale*. Such a bargain could be made with respect to goods, as well as with respect to lands. And in relation to goods, it changed the title. But it required the artificial solemnities of conveyance by livery or grant to change the title to lands. Therefore, if I bought your farm, and paid you the money for it, there was indeed a bargain and sale between us, but there was no passing of the title from you to me.

Now this bargain and sale could be by word of mouth, or might be put into writing, or in the form of a deed. It was equally a *bargain and sale*.

But the courts of law could not recognise it as transferring the title to the land sold. The Court of Chancery, however, recognised it, so far as to compel the seller to allow the buyer to have the *use* of the land. The statute of uses (27 *Hen.* 8, *c.* 10) carried the *estate and possession to the use*, in all cases where the bargain and sale was put into the *form* of an *indenture* and enrolled. Thus the statute obviated the necessity of a *conveyance*. Its own operation had the effect of a conveyance, and a bargain and sale by the operation of the statute came to have the *effect* of a conveyance. But it remained, in its own proper nature, just what it was before, a *bargain and sale*.

Now there is an old proverb, which might be raised to the dignity of a maxim of law, that it takes *two* to make a *bargain*.

The court will, therefore, see what I mean when I say, that a *bargain and sale* is, in its essential nature and character, a *mutual contract or agreement between two or more parties*. It is *necessarily* such. One party agrees to sell, and the other agrees to buy. There can be no *bargain and sale* unless both are agreed. If a bargain and sale is expressed in a deed, or evidenced by a deed, that deed must necessarily, or at least ought, upon every sound legal principle, to be an indenture. An indenture is *the* fit and proper form of the deed. And when a deed of *bargain and sale purports* to be an indenture, and is accepted and acted under as such by both parties,

Finley v. Simpson.

the law will give it all the effects and consequences of an *inden-ture*, a technical indenture.

I have made these observations because it may be said, on the other side, that although called an indenture, the deed in the case at bar is *simply a conveyance*, and is not an indenture of its own proper nature. Deed and statute together have the effect of a conveyance undoubtedly; but it must be remembered that the statute can only act on a use, and a use can only be raised by the bargain, and that can properly be expressed by deed only in the form of an indenture.

The deed is then an *indenture*, both in name and in its essential character, both *substantially and technically*. Being such, the point I contend for is this, that although the defendant did not seal and deliver the instrument, yet, *inasmuch as he accepted this deed as an indenture*, and *accepted the estate bargained for therein*, and *took possession under the deed*, it is. *his deed* as well as that of the plaintiff who *did* seal it.

An indenture is, and must be a mutual deed, *i. e.* the deed of both parties, or else it ceases to be an indenture. It is a deed *inter partes*, or, as Lord Coke says, "A writing containing a conveyance, bargain, contract, &c., *between* two or more," and, as the learned Sir Henry Finch says, "An indenture is the mutual deed of both." If one party is bound by it, the other ought to be equally bound by it; and the obligation of each ought to stand upon the same point of solemnity. Public policy, it seems to me, so requires it.

All the *parts* of an indenture form but one deed in law, and every part is of as great force and effect as all the parts together be, that is to say, each part is by itself equal evidence with all the other parts of what *the one indenture is, and of its existence.*

"A party to an indenture, having accepted it, and gone into possession of land under it, is estopped from repudiating the indenture." It is an estoppel *in pais*. He cannot deny it to be his deed.

For confirmation of the principles which I have now laid down, I refer the court to the following authorities: 38 *Ed.*

3, 8, *a ;  Littleton,* § 370, 374, 666, 667 ;  *Co. Lit.* 231, *a ; Finch's Law* 109 ;  *Shep. Touch.* 177 ;  *Com. Dig. Tit. Covenant A* 1, *pl.* 5, 6 ;  *Ib. Tit. Fait, A* 2, *pl.* 13 ;  *C* 2, *pl.* 2 ;  *Vin. Ab. Tit. Condition (I, a* 2) ;  4 *Cr. Dig.* 393 ;  *Butler's Dig.,* note (1) *to Co. Lit.* 230, *C ; Thomas' edit. Co. Lit., vol.* 2, 230, *note ;* Lord Eldon, *in* 1 *Ves. & B.* 14, *Staines* v. *Morris ; Sir W. Grant,* 1 *Meriv.* 265, *Wilkins* v. *Fry ; C. J. Abbott,* 5 *Barn. & Cr.* 589, 602, *Burnett* v. *Lynch.*

Against this array of authority, the only opposing voice is Mr. Platt's, in his *Treatise on Covenants,* whose views I shall discuss hereafter.

The case from the Year Books was an action of debt, but, as I shall show, establishes the principle contended for as applicable to actions of covenant, as well as debt. The note of this case, in *Co. Lit.* 231, *a,* is more full and satisfactory than that in the printed book itself. It is well known that the Year Books long remained in manuscript, and that the old lawyers and the inns of court had their own manuscript copies of them ; and that the printed editions contain large gaps, which are to this day supplied by the manuscript copies in England. It is necessary to advert to this fact, to show why I deem Lord Coke's note of the case as reliable as that in the printed Year Books.

The case was thus : An indenture of lease was made between A., the lessor, and D and R., the lessees. Only one of the lessees, D., executed the counterpart of the lease, but both went into possession. The lease contained a covenant, on the part of the lessees, to pay twenty pounds, if certain conditions, named in the deed, were not performed. For breach of these conditions, the lessor sued D. alone *for this penalty.* D. pleaded the non-joinder of R., his co-lessee, in abatement.

The plaintiff replied, that R. did never seal and deliver the indenture, and so his writ was good against D. sole. And the counsel of the plaintiff took a diversity between a rent reserved, which is parallel of the lease, and the land charged therewith, and a sum in gross, as here the twenty pounds is ; for, as to the rent, they agreed, that by the agreement of R. to the lease, he was bound to pay it ; but for the twenty pounds,

which is a sum in gross, and collateral to the lease, and not an-
nexed to the land, *and groweth due only by the deed*, R. said that
he was not chargeable therewith, for that he had not sealed and
delivered the deed. But *inasmuch as he had agreed to the lease,
which was made by indenture, he was chargeable by the indenture
for the same sum in gross.* And for that R. was not named in
the writ, it was adjudged that the writ did abate.

The report of the case in the printed Year Books states pre-
cisely the same facts and the same judgment of the court, but
does not so fully show the course of the argument at bar.

1. This case establishes the entire principle for which we
contend. It *charges the deed upon a man who did not seal it:*
1st, because the deed was an *indenture,* to which the person
thus charged was a party ; 2d, because it conveyed to him an
interest in land, which he accepted and enjoyed under and by
virtue of the deed. 2. It will not do to say that he was charged
with an action of *debt* upon the whole transaction, but was
not charged with the *deed.* The debt was only a collateral
penalty, which could not be charged upon him without his
being charged with the deed. If the deed was not his deed,
he could not have been subjected to the penalty. He *might,*
in such case, have been liable to an action on the case for
breaking the covenants, which the penalty was intended to
secure the performance of. The covenants might then have
fallen upon him in the shape of assumpsits. But the *penalty*
could not have-attached to him. It is evident from the whole
case, when carefully considered, that the court deemed the ac-
tion proper to the case, a pure action of *debt on specialty ;*
and such an action can no more be supported without deed
than covenant can. *Non est factum* may be equally pleaded
in each ; and, if pleaded, the plaintiff is equally bound, in
each, to counter-prove the plea. I take it, therefore, that the
principle of the case is equally applicable to actions of cove-
nant as to actions of debt, for it goes to establish the deed it-
self, which is the foundation of both actions. In this way it
was understood by Lord Coke, and by all who have succeeded
him (with the single exception of Mr. Platt), as the subsequent

authorities will show.   It is from a misconception of this very point that Mr. Platt withdraws his assent from the common understanding of the profession.   And herein is the fallacy of his whole argument.

3. Again, it will not do to say, that the non-executing lessee in this case was bound by the deed, because his co-lessee sealed and delivered it.   His co-lessee did not seal and deliver it for him, and as his deed, but only for himself, and as his own deed.   There is a large class of cases in which a man is deemed to have executed a deed where it has not been executed *propria manu*, but has been executed in his name and on his account, by some one authorized by him to do so, or by some one for him, whose act was afterwards either expressly or impliedly confirmed by him.   But these cases are a class by themselves, and the case in the Year Books is not one of them.   It stands on an entirely different footing and different principles, and is so understood by all the authorities.   No stress is any where laid upon the fact of the other lessee having executed the deed.   And even Mr. Platt, while he admits that the case, properly understood and applied, is good law, does not attempt to confine its operation to those cases alone in which a co-party *has* executed the deed.   And there is no where else a lisp of such a thing.   The case is often cited, it is true, according to its circumstances; but whenever the abstract principle involved in it is attempted to be stated in full, this accidental circumstance is omitted.   If the case is authority at all, it is authority for the broad principle, that any party to such an indenture, by accepting it, and entering upon the enjoyment of the estate under it, makes it his deed.   To stop short of this point would be an *evasion of the case.*

Again, I wish it clearly understood that I do not stand upon this ancient case alone, irrespective of subsequent authorities. I shall presently show that the whole course of opinion, from that time down to the present, is to the same point.   But inasmuch as this is the leading case to which the subsequent authorities seem directly or indirectly to point, and inasmuch as it has been asserted that the principle contended for by us is not involved in the case itself, I have been the more particular

in the examination of it, while, at the same time, I by no means relinquish the credit which is justly due to the other authorities referred to, from their own intrinsic weight. An opinion of Chief Baron Comyn on a point of common law has almost as much weight at this day as an adjudged case in the Year Books.

To show, now, that I am right in the foregoing observations on the point and bearing of the case in 38 *Edw.* 3, and in my view of what has been deemed the common law, as applicable to the case at bar, for centuries, I shall make several extracts from the authorities which I cited above, presenting them in chronological order.

1. *Lord Coke.* (1,) the whole tone and bearing of his note of the case in 38 *Edw.* 3, contained in *Co. Lit.* 231, *a*, which I have already quoted, especially the language used in the conclusion, "*inasmuch as he agreed to the lease which was made by indenture, he was chargeable by the indenture for the sum in gross.*" (2.) In *Brett* v. *Cumberland*, 1 *Rolles' Rep.* 359, and *S. C.* 3 *Bulstrode* 163, 164; one question was, whether the king's lessee by patent, not having put his seal thereto, (as no counterparts are made of patents) is liable in *covenant* on the stipulations on the part of the lessee, it was clearly held that he is. I do not cite the *decision* in this case (though, perhaps, I might properly do so,) for the purpose of proving my point; because the liability of the king's lessee to the covenants in a patent, is commonly put on the ground of the patent being a record. But I cite the case, because *Coke*, C. J., in giving his assent to the lessee's liability in such case, cited and relied on the case in 38 *Edw.* 3, which shows his view of the bearing of that case.

2. *Sir Henry Finch* (1614), one of the profoundest lawyers of his age, in his Book of the Law, 109, on the different kinds of deeds, says: "A deed is a deed poll or indenture. Poll, that which is the only deed of the grantor. Indenture, that which is the mutual deed of both : yet the deed of the grantor is the principal, and the other is but a counterpart. *And, therefore, if the lessor seal, and not the lessee, it is as good against him as if both had sealed.*"

3. *Mr. Justice Doderidge,* (Lord Coke's associate on the bench, and author of Sheppard's Touchstone) in page 177 of that work, under the head, " Who shall be bound and charged by a covenant, and against whom a writ of covenant doth lie, and where or not," says : " If a feoffment or lease be made to two, or to a man and his wife, and there are divers covenants in the deed to be performed on the part of the feoffees or lessees, and one of them doth not seal, or the wife doth, or doth not seal during the coverture, and he or she that doth not seal, doth, notwithstanding, accept of the estate, and occupy the lands conveyed or demised, in these cases, as touching all inherent covenants, as for payment of rent, and the accessaries thereof, reparations and the like, they are bound by these covenants as much as if they do seal the deed." So a remainder man, though he do not seal the deed which created his remainder. So the king's patentee, &c. " But, *quere* of *collateral* covenants, for therein the feoffee or lessee is not bound. And . yet it is said, that if an *indenture* be made between A., of the one part, and B. and C., of the other part, and therein there is a lease made by A. to B. and C., on certain conditions, and B. and C. are bound to A., by the indenture, in twenty pounds to perform the conditions, and B. only doth seal the deed, and not C., yet in this case if C. accept of the estate, he is *bound by the covenants,* and one of them cannot be sued without the other whilst they are both living. *Qui sentit commodum sentire debet et onus.*"

4. *Chief Baron Comyn, Dig., Tit. Covenant, A* 1, *pl.* 5, 6. " If a lease be to A. and B. by indenture, and A. seals a counterpart, and B. agrees to the lease, but does not seal, yet B. may be charged for *a covenant broken.* Though the covenant be collateral and not annexed to the land." He cites *Co. Lit.* 231, *a ;* 2 *Rolles R.* 63 ; *Com. Dig., Tit. Fait, A* 2, *pl.* 13. " If an indenture be between A., of the one part, and B. and C., of the other, whereby A. demises to B. and C., who covenant with A., if B. seals the counterpart, but C. does not seal, yet if C. agreed to the lease, *it shall be his deed, and he shall be bound by the covenants. Co. Lit.* 231, *a.*" *Com. Dig. Tit. Fait. C.* 2, *pl.* 2, the same thing repeated.

5. *Mr. Cruise.* " Where lands are conveyed *by indenture* to two persons, and one of them does not seal the deed, yet if he enters upon the land, and accepts the deed, in other matters he will be bound by the covenants contained in it." And so with a remainder man.   4 *Cru. Dig.* 393, *Tit.* 32, *Deed, c.* 25, § 4.

6. *Lord Eldon,* 1 *Ves. & B.* 14, *Staines* v. *Morris.* One of the questions in this case was, whether Sir W. Staines was liable to indemnify a lessee (who had assigned the lease to him by deed poll) against the rents and covenants in the original lease, the assignment containing a stipulation that he *should,* but he not having executed it.   Lord Eldon, on the authority of the cases above mentioned, and not attending to the distinction between a deed poll and an indenture, held as follows : " Here is an express covenant that Sir William will pay the rent and perform the covenants ; and *even a court of law,* certainly this court, *would not suffer him to avail himself of the circumstance,* that he had not executed the instrument."

7. *Sir William Grant,* 1 *Meriv.* 265, *Wilkins* v. *Fry.* In the case of *Staines* v. *Morris,* the Lord C. J. held that Sir William Staines was bound by an express covenant, though he had not executed the instrument in which it was contained.   He took the estate under that instrument, and therefore took it subject to the accompanying covenant."

8. *C. J. Abbott,* 5 *B. & C.* 589, *Burnett et al.* v. *Lynch.* Burnett was a lessee, and assigned the term to Lynch by *deed poll,* he to pay the rents, &c.   He failed to pay, and Burnett brought an action on the case against him.   The defendant, among other things, contended that the action should have been *covenant. C. J. Abbott.* I think that *an action of covenant* is not maintainable, for an action of covenant is of a technical nature.   It cannot be maintained, except against a person who by himself, or some other person acting on his behalf, has executed a deed under seal, *or who under some very peculiar circumstances (such as those mentioned in Co. Litt.* 231, *a,) has agreed by deed to do a certain thing.*   Here the defendant has not engaged by deed to perform the covenants, and consequently covenant will not lie."

I ask, now, do not these authorities establish all that we contend for? In a case like ours, can the answer be doubtful to the question, " what was the received law in England, when we became an independent nation?"

Mr. Platt, himself admits that the principle had been held in its full extent. He says, " A proposition has been advanced, and *received without scruple by the profession*, that a person may, by certain acts of his own, such as his acceptance of an interest conveyed by a deed which he never executed, bind himself to perform all the covenants and conditions therein contained, as effectually as if he had in a formal manner sealed and delivered the instrument. On page 10, he further admits, that " the principle has been transcribed from book to book, and has at different times been adopted in the works of gentlemen highly distinguished for their legal attainments, and that he felt considerable diffidence in venturing to deviate from the beaten track, and to submit his own views in opposition to the opinions entertained by more experienced members of the profession." His whole argument is based on the notion, that all those " highly distinguished " and " experienced " gentlemen, to whom he refers, had misconceived the principle involved in the case in 38 *Edw.* 3, in supposing it applicable to actions of *covenant, as well as debt.*

I think I have shown that they understood the point of that case better than Mr. Platt himself seems to have done.

The conclusion of his examination of the point is worthy of remark : " Perhaps, however," he says, " the doctrine has been too long sanctioned to be now reversed ; at all events, it is an introduction of an equitable principle into a court of law, the acceptance of a deed being considered equivalent to an actual execution by the lessee."—Page 18.

It is, no doubt, the usual and almost invariable rule, that a man cannot be charged in covenant with a deed, unless he by himself, or another, seal it. The great generalness of the rule, goes far to raise a prejudice against an exception to it. The desire to simplify rules, and clear them of exceptions, is common to us all. It seems to be the case with Mr. Platt. His love of absolute uniformity leads him to overlook the equal import-

ance of well judged exceptions. In this spirit. is conceived his observation, on page 17, that " on a plea of *non est factum* in such a case, where the bare question is *deed or no deed*, it would seem impossible to establish an indenture against the defendant who never sealed, so as to render him liable in covenant." This is the very question he is discussing. He begs the very question at issue. We contend that it *is* the defendant's deed ; that it is a proper indenture, the mutual deed of both parties ; that defendant is estopped by his own act from denying it to be such ; that it does not lie in his mouth to say, *non est factum.*

But besides all the authorities directly in point, (as we deem them to be), there are analogous cases, in which we think the same principle is involved, and which would infallibly lead to the conclusion to which we have come. I refer to the cases of the *king's lessees* by patent and of *remainder men*, to which reference has already been made. In these cases an action of covenant lies against those who have never executed a deed, although it cannot be said that the deed. is their deed. · In such cases *non est factum* would be an immaterial plea, and judgment would be rendered for the plaintiff *non obstante veredicto.* The case of remainder men *is* referred to by *Littleton,* § 374 ; *Co. Lit.* 231, *a ; Shep. Touch.* 177, and nearly all the other authorities above cited. They are held liable to the covenants entered into by the particular tenant by indenture, if they accept the estate in remainder on the. determination of the particular estate. And this, although they never sealed the deed. The deed cannot be called their deed, because they are not named party to it. Yet they are liable to the covenants.

So in our case, if the court should think that *we* are not entitled to the verdict on the plea of *non est factum*, we still contend that our *action of covenant* is right, and that the plea is an immaterial one, and that consequently we are entitled to judgment *non obstante veredicto.*

I see nothing in the cases cited by defendant's counsel on the trial which requires any comment. They were either cases of deeds poll, or mere personal contracts, or decided without re-

ference to the long train of authorities on which we rely. The case in 6 *Cowen* 445, was not an *indenture*, *but* mere articles of agreement; no estate passed, and the said authorities were not adverted to.

The CHIEF JUSTICE delivered the opinion of the court.

The general principle, that an action of covenant can only be sustained where the instrument upon which the action is brought has been actually signed and sealed by the party, or by his authority, is abundantly sustained by the authorities cited by the counsel of the defendant. There are, however, exceptions, of which actions upon the custom of London, actions against the king's lessee by patent, and against remainder men, are admitted instances.

The only inquiry is, whether an indenture of bargain and sale, purporting to be *inter partes*, by which an estate is conveyed to the grantee, if the grantee accept the deed, and the estate therein conveyed, though the indenture be not sealed and delivered by him, is not *his* deed, as well as the deed of the grantor.

The affirmative of the proposition is sustained by the following authorities, cited, with many others, in the brief of the plaintiff's counsel: *Co. Lit.* 231, *a*, 230, *C*, note 1 ; *Sheppard's Touch.* 177 ; 4 *Cruise Dig.* 393, "*Deed*," Tit. 32, *c.* 25, § 4 ; 3 *Com. Dig.*, "*Covenant*," *A* 1, "*Fait*," *A* 2, *C* 2 ; *Vin. A. C.* "*Condition*," *I*, *a* 2 ; *Burnett* v. *Lynch*, 5 *Barn. & Cress.* 589 ; *Dyer* 13, *C*, *pl.* 66.

A modern elementary writer, of high reputation, denies the doctrine deduced from these cases, and insists that the action of covenant, unless it be founded on the custom of London, or on a contract between the king and a subject, can ever be supported against a person who by himself, or some other person acting on his behalf, has executed a deed under seal. *Platt on Covenants* 18.

He admits, however, that the contrary doctrine has been received without scruple by the profession, has been adopted by writers distinguished for their legal attainments, and that, perhaps, it has been too long established to be now reversed. There is, in our judgment, no reason why the doctrine should be reversed.

In the present case the verdict ought not to be disturbed, if it can be sustained consistently with legal principle. It is manifestly in accordance with the truth and justice of the case. The objection goes to the form of the remedy, rather than to the substantial right of the party, or to the title of the plaintiff to redress. The nature of the covenant, moreover, is fully stated upon the face of the declaration. Whether the facts there stated did or did not constitute a covenant on the part of the defendant, was a question of law, which might well have been raised by demurrer. To give the defendant the benefit of the exception now may operate utterly to defeat the claim of the plaintiff. It is consistent neither with law nor justice that the defendant should hold the title without paying the price. These considerations cannot affect the legal principle, but if the verdict be in accordance with a doctrine long established, and often recognised, they afford strong reasons why that doctrine should not lightly be disturbed.

The rule to show cause must be discharged.

CITED *in* *Patten* v. *Heustis,* 2 *Dutch.* 296; *Earle* v. *New Brunswick,* 9 *Vr.* 52; *Harrison* v. *Freeland, Id.* 367; *Klapworth* v. *Dressler,* 2 *Beas.* 63; *Huyler's Ex.* v. *Atwood,* 11 *C. E. Gr.* 505; *Crowell* v. *Hospital of St. Barnabas,* 12 *C. E. Gr.* 652.